Herbert R. McCLURE and Thelma N. McClure, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. T-5310.

United States District Court, D. Kansas.

Sept. 5, 1974.

Eugene C. Riling, Lawrence, Kan., for plaintiffs.

Robert J. Roth, U. S. Atty., D. Kansas; and E. Edward Johnson, Asst. U. S. Atty., and Richard L. Meyer, Asst. U. S. Atty., D. Kansas, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER FINDINGS OF FACT AND CONCLUSIONS OF LAW

WESLEY E. BROWN, Chief Judge.

This is an action brought by the former owners of certain property leased to

the United States for the use as a post office. The action is for the recovery of rent and for damages allegedly caused by the withholding of the rent. The United States has counter-claimed for costs incurred in making repairs to the premises. Upon considering the evidence admitted at trial and being fully advised in the premises, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

In 1959 the United States solicited bids for the lease of a building in Baldwin, Kansas, to be used as a post office. Herbert McClure, a construction engineer, was awarded the bid. McClure obtained the needed financing, purchased the land and constructed the building according to the plans and specifications submitted by the United States. On February 11, 1960, Herbert and Thelma McClure entered into a 10-year lease agreement with the United States with two five-year options. The agreed rent was $2,940 per year payable at $245 per month. Apparently this same arrangement had been made between the parties in other Kansas communities.

In 1963, McClure complained to the postal authorities that the daily housekeeping was not being maintained and as a result the building was deteriorating. It appears that an investigation was made and corrective measures were taken to clean up the building and premises.

Beginning in July 1965 the local postmaster and other postal authorities began complaining that certain repairs to the building were needed. The major complaints were that the roof and windows leaked when it rained causing the walls to be waterstained, the ceiling tile, floor tile and paneling to come loose, and the paint to flake. The foundation had settled causing the floor tile to crack and the support beams on the rear canopy to come loose. From July 1965 until November 1970 the postal authorities wrote some 29 letters to McClure complaining that repairs were urgently needed. It appears that McClure attempted to repair the roof at one time but was unsuccessful. The roof continued to leak and often buckets were used to catch the falling water.

McClure could not make the repairs himself during the week and requested that he be allowed access to the building on weekends. The normal business hours for Saturday were from 8 A.M. to 12 Noon. The building was closed on Saturday afternoon and on Sunday. McClure was advised by the postmaster and Real Estate Division of the Postal Service that he could not have access to the building after business hours unless a postal employee was present. The Postal Service was willing to grant the extra hours on week-ends provided that McClure would notify them well in advance of the date he wanted access. Apparently McClure never submitted a schedule and additional hours were never authorized. However, access was never denied during normal business hours.

On October 6, 1970, after many attempts to get McClure to make repairs, the Postal Service solicited bids to make the following repairs:

"1. Repair roof, as necessary, to stop leaks.

"2. Repair construction joints in floor by removing tile along cracks, smooth by grinding joints and applying filler, as necessary, to provide level surface.

"3. Replace worn, broken and missing floor tile and adjoining worn tile with similar type as now installed to give good appearance and safe condition.

"4. Replace any and all damaged or missing ceiling tile with similar tile as now installed.

"5. Replace underside of mailing platform canopy with exterior type plywood and paint white (two coats).

"6. Replace metal threshold under exterior mailing vestibule door.

"7. Repair all cracks in walls with caulking; repaint interior and exterior rear wall, doors, win-

dows, and trim. Exterior rear wall to be waterproofed.

"8. Replace trap to service sink. Repair leaking and improper operating water valves.

"9. Base of east support column of mailing platform canopy to be grouted in place."

Two bids were received, one for $1,388 and the other for $1,973. The bid for $1,388 was accepted and the repairs were made.

After making demands to McClure for payment, to which he did not respond, the Post Office Department withheld $1,526.80 from the rental payments for May through October and part of November 1971. The difference between the amount of the bid and the amount of the rent withheld, or $138.80, represented a 10% claim for "administrative expenses."

As a result of the rentals being withheld, McClure defaulted on his mortgage payments in 1971. Attempts to renegotiate the loan were unsuccessful.

In May 1972 the Post Office Department had the air conditioning unit repaired and billed McClure for $145.72.

On December 13, 1972, the property was sold to a third party at a sheriff's sale following the foreclosure on McClure's mortgage. The Post Office Department has remained in continuous possession.

McClure brings this action for rent allegedly due and owing and for $9,900 in damages allegedly suffered by reason of the mortgage foreclosure and sheriff's sale. The United States has counterclaimed for $1,672.52 allegedly representing the expenses incurred in making necessary repairs.

McClure contends that the repairs were unnecessary and unreasonable; that the United States denied him access to the building to make repairs; that the United States should have elected either to abate the rent in proportion to the area of the building that was unfit or cancel the lease; that the repairs, the continued possession, and the withhold-

ing of rent were unauthorized under the lease agreement; that the United States knew that McClure's ability to make his mortgage payments was entirely dependent upon the United States making timely and complete rental payments; and that the withholding of the rent caused him to lose his property in a foreclosure sale.

The United States contends that demand was made to McClure to make repairs; that all reasonable opportunities were afforded to make repairs; that McClure did not respond; that the repairs were reasonable and necessary to the continued use of the leased premises; that the repairs were an obligation of McClure as lessor; and that the withholding of rent was a proper set-off against the cost of repairs. The United States denies that it is liable for any loss suffered in a foreclosure and sale.

To resolve the dispute we must first determine whether the withholding of rent was a breach of the lease agreement. In our opinion it was not.

The pertinent provisions of the lease agreement are as follows:

"7. The Lessor shall, unless herein specified to the contrary maintain the demised premises, including the building and any and all equipment, fixtures and appurtenances, whether severable or non-severable, furnished by the Lessor under this Lease in good repair and tenantable condition, except in case of damage arising from the act or the negligence of the Government's agents or employees. For the purpose of so maintaining said premises and property, the Lessor may at reasonable times enter and inspect the same and make any necessary repairs thereto.

\* \* \* \* \* \*

"10(c). If any building or any part of it on the leased property becomes unfit for use for the purposes leased, the lessor shall put the same in a satisfactory condition, as determined by the Post Office Department, for the purposes leased. If the lessor does not do so with reasonable diligence,

the Post Office Department in its discretion may cancel the lease. For any period said building or any part thereof is unfit for the purposes leased, the rent shall be abated in proportion to the area determined by the Post Office Department to have been rendered unavailable to the Post Office Department by reason of such condition."

It is clear from these provisions that McClure had the duty to maintain the premises to the satisfaction of the Post Office Department; that he was not responsible for damages caused by negligent acts of the Post Office employees; and that he was to be given access to the building to make repairs at all reasonable times. It is also clear that the Post Office could abate the rent or cancel the lease if the repairs were not made. The question is, Was the Post Office limited to these stated remedies?

■ This same question was raised in another action to recover rent brought by the McClures against the United States where the United States had made repairs to a building in Richmond, Kansas, and deducted the expenses from the rental payments. Although the lessor had the duty to maintain the premises in tenantable condition, there was no provision in the lease agreement, the same agreement as in this case, for the lessee to make repairs and deduct the expense from the rental payments. In that case, No. T–4773, decided April 30, 1971, Judge Templar held that by implication when the lessor breached his duty to maintain the premises, the lessee could make the necessary repairs and deduct the expense from the rental payments, rather than abate the rent or cancel the lease. We agree with that interpretation and conclude that it is the law to be applied in this case.

■ We next must determine whether the repairs were necessary and reasonable. McClure contends that the damages were caused by "poor housekeeping" and by the negligence of the postal employees. We disagree. We are persuaded that the repairs were necessary and not caused by any acts or omissions of the postal employees.

The evidence clearly shows that the roof leaked considerably whenever it rained. During and after a rain shower, buckets had to be employed to catch the water. The water stained the walls, ceiling and floor and caused the ceiling and floor tiles to peel away from the surface. The wooden paneling under the windows and canopy became watersoaked and warped. The earth fill beneath the building settled causing the walls and floor to crack and the canopy support column to disengage from the platform. We are of the opinion and so find that these defects required repair in order to maintain the premises in a tenantable condition. The repairs were necessary and were not effectuated by McClure.

■ McClure contends that the Post Office Department did not give him access to the building to effectuate the repairs. It appears from the evidence that McClure was employed outside the State of Kansas and was personally available on week-ends to make the repairs. However, for obvious security reasons, the Post Office could not be left unattended. The Post Office Department was willing to let McClure make repairs during business hours or on Saturday afternoons, provided advanced notice could be given by McClure as to what Saturday McClure wanted to work. McClure never gave notice and did not make the needed repairs despite his assurances that he would.

The lease agreement provided that the lessor would have access at all "reasonable times." We are of the opinion that McClure's demands for access, although most convenient to him, were not reasonable. He wanted to do the repairs himself and to do them on week-ends. This was an unreasonable time to effectuate repairs, in our opinion, in light of the circumstances. McClure was given ample opportunity six days a week for almost six years to effectuate the repairs. This opportunity we consider to be more than reasonable.

Earl Schmanke, the contractor to whom the Post Office Department let the bid for repairs, testified that he performed all repairs listed on the invitation, Exhibit L-1. Marvin Jardon, the postmaster at Baldwin, Kansas, testified that all repairs were satisfactory. Schmanke's bid was the lowest of those submitted and we consider the amount of the bid to be reasonable.

█ It appears that the Post Office Department added an additional 10% to the cost of repairs when deducting the expense from the rent as an "administrative expense." We find no basis for this increased cost. The amount that may be deducted from the rental payment is the expense of *repair*. Any additional "administrative expense" is in excess of the cost of repair and is an unnecessary and unreasonable deduction from the rental payments. The amount that should have been deducted is $1,388 for repairs to the building and $145.72 for repairs to the air conditioner.

There having been no breach of the lease agreement by the United States, there can be no claim for damages arising out of the mortgage foreclosure.

## CONCLUSIONS OF LAW

The Court concludes as a matter of law and fact,

1. that the Court has jurisdiction of the parties and of the subject matter;

2. that the lease in question has been valid and binding upon the parties at all times herein material;

3. that the McClures, as lessors, had the duty to maintain the premises in good repair and in a tenantable condition;

4. that the premises were not maintained in good repair and in a tenantable condition;

5. that timely notice was given by the United States that repairs were necessary;

6. that the McClures, as lessors, were afforded reasonable access to the premises to effectuate repairs but did not repair the premises;

7. that under the contract the United States was not limited in remedies to an abatement of the rent or cancellation but could elect to make the repairs and deduct the expense from the rental payments;

8. that the reasonable cost of repairs was $1,533.72;

9. that the repairs were ordinary and necessary;

10. that the United States is entitled to judgment against the McClures on its counterclaim for $6.92 ($1,533.72, less credit for all sums withheld from rentals in the amount of $1,526.80) plus costs.

11. that the McClures are not entitled to the relief prayed for.

Counsel for the United States is hereby directed to prepare, circulate and submit a proposed judgment in accordance with the foregoing findings of fact and conclusions of law.

It is so ordered.