**J. & R. REALTY CO., INC.**

v.

**The UNITED STATES of America.**

**Civ. A. No. 75–4.**

United States District Court,
E. D. Pennsylvania.

June 30, 1976.

Ronald H. Isenberg, Philadelphia, Pa., for plaintiff.

Robert S. Forster, Jr., Asst. U. S. Atty., Philadelphia, Pa., for defendant.

OPINION

DITTER, District Judge.

This case involves the duty imposed by a lease which makes the owner responsible to keep the premises in "good repair and tenantable condition" and permits the withholding of rent if they become "unfit" for their intended use. The lessee in question is the United States which has used the property as a post office for 19 years. When the owner refused to paint the building, the Postal Service had the work done

and withheld rent to obtain reimbursement. Plaintiff then brought this action to recover rent and possession. Both parties have moved for summary judgment, but for the reasons expressed herein, their motions must be refused.

In May of 1957, John and Rose DiEgidio, using a standard government form, leased to the United States premises at Levick and Revere Streets, Philadelphia, for a post office. In July of 1973, on the basis of a visual inspection and report by the superintendent of building services of the Postal Service, plaintiff[1] was advised that the premises were in need of interior and exterior painting. Some eleven years had elapsed since Mr. and Mrs. DiEgidio painted both the interior and exterior of the building. A similar effort had been undertaken in 1960. J. & R. refused to do the work, citing the absence of any precise obligation in the lease. Defendant, maintaining its position that it was the long-standing policy of the Postal Service to regard painting as part of the lessor's overall maintenance responsibility, issued solicitations for bidders to do the requested work after giving due notice to plaintiff that this action would be taken. Following completion of the contract, defendant withheld payment of $5200., the amount of the low and accepted bid. Plaintiff thereafter instituted this proceeding seeking to recover the unpaid monthly rentals, a declaration that defendant's rights under the lease are terminated, and an order directing the Postal Service to vacate the premises.

■ At the outset, it is plain that as an action for determination of the rights under a lease to which the United States is party, this case is governed by federal rather than local law, *American Houses v. Schneider,* 211 F.2d 881, 882–83 (3d Cir. 1954); *Girard Trust Co. v. United States,* 161 F.2d 159, 161 (3d Cir. 1947); *Girard Trust Co. v. United States,* 149 F.2d 872, 874 (3d Cir. 1945), although, in the absence of precedent, the court may look to the general law of landlord and tenant for guidance. *Patton v. United States,* 139 F.Supp. 279, 283 (W.D. Pa.1956).

Here there are two paragraphs of the lease which are important:

7. The Lessor shall . . . maintain the said premises *in good repair and tenantable condition* during the continuance of this lease, except in case of damage arising from the act or the negligence of the Government's agents or employees. For the purpose of maintaining the premises, the Lessor reserves the right at reasonable times to enter the premises and to make any necessary repairs to the building [emphasis added].

10. Whenever any building or part of a building *becomes unfit for use as a post office,* no rent shall be paid until the same *shall be put in a satisfactory condition by the owner* thereof for occupation as a post office, or the lease may be cancelled, at the option of the Postmaster General [emphasis added].

Good repair was held, in *Hampers v. Darling,* 194 Pa.Super. 59, 62, 166 A.2d 308, 310 (1960), through the phrase "maintain and keep in good repair," to imply "the preservation of the status quo, or a restoration approximately to the original condition, natural wear and tear excepted." In *United States v. 15.3 Acres of Land, etc.,* 154 F.Supp. 770, 781 (M.D.Pa.1957), the court held that where a lessee had covenanted to make "necessary" repairs, it was required to make such repairs as were necessary for the use of the premises and the purpose for which they were leased.[2] In the instant case, the lease does not leave any doubt as to what that purpose is—or the nature of what is required—for it specifically states that the owner is to keep (and if necessary restore) the building so it will be in a "satisfactory condition" for "use as a post office."

1. In January of 1968, Mrs. DiEgidio, following the death of her husband, transferred the leasehold interest to the plaintiff and present lessor, J. & R. Realty Co., Inc.

2. This view is supported by a few state cases, as set out in 51C C.J.S. Landlord & Tenant § 368(5) (1968) and the supplement.

If a building is to be in a satisfactory condition for use as a post office, it must not only have a sound roof and a floor that will not collapse—it must be orderly and clean, which means that from time to time it must be painted. The post office is the only contact many people have with the United States government. An attractive, well-kept building conveys a message, subjective though it may be, of governmental efficiency. It also provides a suitable working environment which spurs employee morale and aids in the efficient execution of Postal Service purposes.

■ On two prior occasions, 1960 and 1962, the building was painted by the owners, the original parties to the lease. This fact, plus the government's assertion that it is the Postal Service's policy to regard painting as the lessor's obligation, is indicative of the parties' intent when they entered into this agreement. There is "a clearly discernible tendency on the part of courts to cast aside technicalities in the interpretation of leases and to concentrate their attention, as in the case of other contracts, on the intention of the parties . . . ." 6 Williston on Contracts § 890A (Jaeger 3d ed. 1962). The particular paragraph in a lease embodying a covenant to repair is controlling in determining the obligation between the parties, but in construing the language of such a paragraph, the court will ascertain the intent of the parties from the four corners of the instrument and from the surrounding circumstances. *Patton,* supra, 139 F.Supp. at 283–4. Any obligation which the agreement imposed on the original lessor is obviously now imposed on J. & R.

■ The Government relies on *McClure v. United States,* 382 F.Supp. 988 (D.Kan. 1974), to support its position that it is entitled to withhold the entire $5200. spent for painting. I must disagree. The lease and issues involved in *McClure* and the present case are quite similar.[3] However, painting in *McClure* was but a minor remedy when compared with the total amount of work that was required.[4] In addition, this work was necessitated by water damage resulting from a leaking roof, a structure plainly within the responsibility of the lessor to maintain. I have no disagreement with the court's decision that repairs listed were necessary to maintain the premises in good repair and tenantable condition, but find also that the circumstances present in *McClure,* namely the vast amount of repair work required and the relative unimportance of the painting in comparison thereto, do not warrant holding that *McClure* stands for the proposition that painting the entire building is the lessor's obligation per se under the terms of the present lease.

Here, the entire interior of the building was painted, including such areas as closets, rest rooms, storage rooms, the vault and boiler room. Relying upon a discovery that the roof cooling tower, ventilator and platform support columns were rusting, the government had the exterior of the building painted also, including the exterior woodwork, the employe's entrance door and frame, the inspector's entrance door and frame, all ornamental ironwork, and the flag pole.[5] While I can go so far as to hold that places such as the lobby, which encompasses one-third of the interior floor area,

---

**3.** The language in Paragraph 7 of the lease was very close to that of Paragraph 7 at issue here, and required the lessor to maintain the premises in good repair and tenantable condition.

**4.** Other repair work included (1) repairing the roof to prevent leaks, (2) repairing construction joints in floor, (3) replacing worn, broken and missing floor tile, (4) replacing damaged ceiling tile, (5) replacing the underside of the mailing platform canopy, (6) replacing the metal threshold under the exterior mailing vestibule door, (7) repairing all cracks in the wall, and (8) performing additional repair work to restore the building to its condition prior to the water damage.

**5.** See U.S. Postal Service Contract No. 41–6344–74–R–0034, under *Scope of Work—Exterior Painting,* Section –01 Extent of Work. Work to be included under this section involved painting the entire building and its approaches, gratings, window guards, drains, all ferrous metal work and ornamental metal lamp standards. In addition, the contractor was to replace cracked or missing glass, replace halyards on the flagpole and polish door plates.

the work room, the superintendent's office and the rest rooms are areas where painting may be necessary to render the premises suitable for post office operation, other rooms perhaps should not be included. The same is true of certain aspects of the work done on the outside of the building, among them the replacement of cracked glass, which may or may not have been caused by government employes, the polishing of door plates, halyard replacement and the ornamental metal work painting. It is quite possible that the government was not justified in contracting for this type work and stepped beyond its rights in doing so.

■ The second and final issue presented involves the government's right to set off the cost of the repairs against the rent due to J. & R. Paragraph 10 of the lease provides:

> Whenever any building or part of a building becomes unfit for use as a post office, no rent shall be paid until the same shall be put in a satisfactory condition by the owner thereof for occupation as a post office, or the lease may be cancelled, at the option of the Postmaster General.

The court in *McClure,* supra, 382 F.Supp. at 992, considered a similar lease provision and determined that the United States was not limited in remedies to an abatement of rent or cancellation of the lease but could elect to make the repairs and deduct the expense from the rental payments. Prior Pennsylvania state court decisions have advanced this same reasoning for many years. See *Demas v. Laskey,* 358 Pa. 633, 635, 58 A.2d 134 (1948). *McDanel v. Mack Realty Co., et al.,* 315 Pa. 174, 177, 172 A. 97, 98 (1934); *Osso v. Rohanna,* 187 Pa.Super. 280, 284, 144 A.2d 862, 864 (1958); *Jackson v. Farrell,* 6 Pa.Super. 31, 35 (1897). Accordingly, it is clear that the government was within its right to set-off the costs of the necessary painting.

I conclude that the plaintiff had a responsibility to perform a significant portion of the painting ordered by the government and, further, that the government was justified in withholding from its rental payments the costs of those repairs determined to be necessary. However, a determination of the repairs to be declared essential, as well as the fairness and reasonableness of the charges for them cannot be made at this time. These issues involve disputed questions of fact, incapable of solution on motions for summary judgment. Therefore, the motions must be denied.