**Roberta WEISSMAN, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**Civil Action No. 97–1449(JBS).**

United States District Court,
D. New Jersey.

Aug. 26, 1998.

Robert E. Rochford, Winne, Banta, Rizzi, Hetherington, & Basralian, P.C., Hackensack, NJ, for Plaintiff.

Faith S. Hochberg, United States Attorney by Dorothy Donnelly, Assistant United States Attorney, Trenton, NJ, for Defendant.

## OPINION

SIMANDLE, District Judge.

Plaintiff, Roberta Weissman, brings this tenant ejectment action against defendant United States Postal Service ("USPS") in which she alleges that defendant failed to pay rent pursuant to a written lease agreement between the parties. Presently before the court are the parties' cross-motions for summary judgment.[1] Defendant argues that under 26 U.S.C. § 6332(e) it is immune from suit due to its good faith surrender of rental payments to the Internal Revenue Service ("IRS"). Plaintiff counters that defendant's failure to pay rent was a breach of the lease agreement.

This court has subject matter jurisdiction pursuant to 39 U.S.C. §§ 401(1) & 409(a).

## I. *Background*

### A. *Factual History*

Defendant USPS is currently in exclusive occupation and possession of a building and grounds located at 171 Broad Street, in the Borough of Red Bank, Monmouth County, New Jersey ("Premises"). Defendant occupies the premises pursuant to a written lease agreement. (R. Weissman Aff., Ex. A.)[2] The lease is for a term of twenty years, beginning August 1, 1965, and ending July 31, 1985, with six renewal terms of five years, exercisable at the option of defendant, and rent payable at the end of each month. (R. Weissman Aff., Ex. A.) Defendant has exercised its option to renew the lease for the term beginning August 1, 1995, and ending July 31, 2000. (R. Weissman Aff. ¶ 2.) The annual rent due for the term beginning August 1, 1996, and ending July 30, 1997, was $37,450.00. (R. Weissman Aff., Ex. A.)

Defendant originally entered into the lease agreement with Bernard Weissman and his wife, plaintiff Roberta Weissman, and Charles and Pauline Weissman, Bernard's parents, trading as Frelin Company. *Id.* Since then, ownership interests in the property have changed several times. By deed recorded December 29, 1976, Frelin Company conveyed ownership to Bernard Weissman.[3] (R. Weissman Aff., Ex. B.) Bernard Weissman then conveyed his interest to himself and plaintiff Roberta Weissman in October 1980. (R. Weissman Aff., Ex. B.) In August 1991, Tobar Construction Co., Inc., recovered a judgment jointly and severally against two real estate partnerships jointly and Bernard Weissman individually. (R. Weissman Aff., Ex. C.) The Tobar judgment was assigned to Donald Zucker, who has sworn he paid $200,000 for the judgment of approximately $308,000 plus post-judgment interest. *Id.* Zucker executed the judgment on Bernard Weissman's property and in doing so caused the Sheriff of Monmouth County to conduct a public execution sale of Bernard Weissman's interest in the premises. *Id.* Zucker himself successfully bid for Bernard Weissman's interest and was conveyed it by deed in June–July 1995. *Id.* On July 1, 1995, Zucker recorded that deed, the Writ of Execution, and the details of the public sale and advertisement of it. *Id.*

Zucker transferred his interest in the premises back to Bernard Weissman in a deed dated May 2, 1996. (Donnelly Dec., filed August 3, 1998, Ex. 4.) Zucker signed the deed before a notary public and acknowledged under oath that he "signed, sealed and delivered this Deed as his act and deed." (*Id.*) On that date, he also signed an affidavit in which he acknowledged the reconveyance. (*Id.*, Ex. 5.) The deed was apparently never physically delivered to Mr. Weissman, but was held in escrow by counsel and returned

---

1. Although defendant asks that this action be dismissed or, in the alternative, that summary judgment be granted, defendant's papers make clear that the motion before the court is for summary judgment.

2. Unless otherwise noted, references to plaintiff Roberta Weissman's affidavit are to her affidavit filed on June 27, 1997.

3. A copy of the deed is attached to the declaration of Henry Burmeister, defendant's contracting officer for its leases on New Jersey properties. (Burmeister Dec., Attach.)

to Zucker. (B. Weissman Cert., ¶ 17.) Zucker then conveyed this same interest to plaintiff by deed dated August 21, 1996. (R. Weissman Aff., Ex. E.) This deed specifically refers to the prior 1995 deed and indicates that it conveyed what was formerly Bernard Weissman's interest in the premises. *Id.* There is no evidence that either the Zucker–Bernard Weissman deed or the Zucker–Roberta Weissman deed was ever recorded. (*See* Donnelly Letter, received August 11, 1998.)

The names of the lessors on the defendant's lease of the premises have never been changed. (*See* R. Weissman Aff., Ex. A.) Prior to this dispute, however, defendant did change payees for the rental payments. The parties agree that, after years of sending monthly rental payments to Bernard Weissman, in 1994 defendant forwarded payments to a receivership on behalf of Bernard Weissman. (R. Weissman Aff., Ex. I; Def. Mem. at 2.)

In a letter dated July 29, 1996, Robert Rochford, counsel for plaintiff, informed Jim Howlin, Postmaster of the Red Bank Post Office, that the rent receivership had been terminated and requested that all future rent payments be sent to plaintiff, care of her attorneys. (R. Weissman Aff., Ex. D.) Defendant did not comply with this request. (R. Weissman Aff. ¶ 4.) Instead, defendant sought additional information and documentation from the attorney for the lessor, whom defendant still believed was Bernard Weissman, on September 13, 1996, as shown by contemporaneous file notes of the Facilities Contract Specialist, Frances El–Shabat. (*See* Memo from Curts to El–Shabat, dated Sept. 12, 1996, and notes thereon, dated Sept. 13, 1996, attached to Certification of Robert E. Rochford, dated August 24, 1998, at Ex. B.) The Contract Specialist correctly noted that the "file indicates *Mr.* Weissman" as owner, and that she would need "documentation … as to proper ownership." *Id.* (emphasis in original). Also, she noted that nothing had been received from Mr. Weissman indicating that Rochford had power of attorney to receive defendant's rental payments. (*Id.*) These efforts by defendant to receive actual documents evidencing transfer of the premises' title continued, as shown by Contract Specialist El–Shabat's notes of October 30, 1996. (*see* Memo from Curts to El–Shabat, dated Oct. 29, 1996, and notes thereon, dated Oct. 30, 1996, attached to Rochford Cert., dated Aug. 24, 1998, at Ex. F.) The Zucker to Roberta Weissman deed was of no use, since Zucker too was unknown to USPS. (*Id.*)

Meanwhile, defendant received a notice of levy from the IRS dated September 13, 1996, stating that $136,410.26 was owed to the government and naming Bernard Weissman as the taxpayer. (R. Weissman Aff., Ex. F.) The levy required that defendant turn over to the IRS the delinquent taxpayer's property and rights to property that defendant was obligated to pay. *Id.* The notice requested that defendant make a reasonable effort to identify all property and rights to property belonging to the delinquent taxpayer and, at a minimum, to search its records. *Id.* The notice provided a reply form to be returned if defendant found that it did not owe any money to the taxpayer. *Id.* Upon receipt of the notice, and believing Bernard Weissman to have an interest in the premises or rents, defendant began to make rental payments to the IRS. (Donnelly Dec., filed February 2, 1998, Ex. A.)

Attorney Rochford wrote another letter to defendant dated October 9, 1996, advising it that plaintiff was the owner of the premises. (R. Weissman Aff., Ex. G.) Attached were copies of the deed from Zucker to plaintiff and a mortgage dated September 30, 1996, between S.B. Konner as mortgagee and plaintiff as mortgagor that secured a $165,000 promissory note "from the mortgagor and Bernard Weissman." (R. Weissman Aff., Ex. H; R. Weissman Cert., Ex. A.) The defendant's Facilities Contract Specialist promptly examined the Zucker deed and reasonably found it was insufficient to cure the confusion about ownership, as noted above.

Dan Curts, Senior Attorney for the USPS, replied in a letter dated November 1, 1996, asking for an explanation of Zucker's role in the matter. (R. Weissman Aff., Ex. H.) Attorney Curts stated that Rochford's July 29, 1996, letter was the first indication, albeit unconfirmed, that Roberta Weissman was

the sole owner of the premises rather than a joint owner with her husband Bernard. *Id.*

Four more months passed until attorney Rochford responded in a letter dated March 7, 1997, providing documentation allegedly confirming that Roberta Weissman was the sole owner of the premises. (R. Weissman Aff., Ex. I.) Attached were a copy of the October 1980 deed and a copy of the July 1995 deed, Writ of Execution, and details of the public sale. *Id.* Attorney Rochford informed defendant that because defendant had withheld all rent from plaintiff in spite of its recognition that she was at least a joint owner, plaintiff declared the lease terminated and demanded immediate possession of the premises. *Id.*

Plaintiff filed the present lawsuit, seeking payment of rent due, termination of the lease, and ejectment from the property. In the meantime, the IRS has returned all levy proceeds without prejudice to future action (Donnelly Dec., filed February 2, 1998, ¶ 3), and all proceeds from rental payments were deposited with the Clerk of the Court pursuant to an order by Chief Judge Anne E. Thompson. Defendant has also paid water rent to prevent a sale of the property. (*Id.* ¶ 5.) On July 8, 1998, Chief Judge Thompson's order was dissolved with the consent of the parties, and all funds deposited with the court have been paid to plaintiff. There is no dispute that rent payments are now current, and future payments will be made directly to plaintiff. (*See* Donnelly Letter of July 13, 1998.)

### B. *Procedural History*

Plaintiff filed this action on March 14, 1997, and the case was assigned to United State District Judge Clarkson S. Fisher on March 17, 1997. Plaintiff filed a motion for summary judgment on June 27, 1997, and the case was re-assigned to Chief Judge Thompson on August 8, 1997.

On September 4, 1997, Chief Judge Thompson denied plaintiff's motion for summary judgment. Defendant had opposed the motion on the grounds that discovery was necessary (1) to clarify whether the IRS lien pertained only to Bernard Weissman, and (2) to investigate the mortgage dated September 30, 1996, between plaintiff and S.B. Konner. Slip Op. at 5. Defendant had indicated that further discovery might reveal that the property was gifted back by plaintiff or that its use to secure a debt of Bernard Weissman was inconsistent with the claim that he has no interest in the property. *Id.* The court found that further discovery was required and that the motion was therefore premature. *Id.*

Pursuant to an order of Chief Judge Thompson dated November 6, 1997, proceeds in dispute were deposited with the Clerk of the Court. The sum of $34,570.63 was deposited on November 19, 1997; $24,966.64 was deposited on June 17, 1998; and $3,120.83 was deposited on July 8, 1998. The case was reallocated to the undersigned on October 16, 1997, and the parties filed the pending cross-motions for summary judgment on February 2, 1998.

With the consent of both parties, this court entered an Order on July 8, 1998, vacating the Order dated November 6, 1997, and ordering the Clerk of the Court to pay plaintiff all funds received pursuant thereto. The court further ordered that defendant shall make monthly rental payments to plaintiff pending the entry of final judgment in the present matter.

### II. *Discussion*

#### A. *Summary Judgment Standard*

A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.*

In deciding whether there is a disputed issue of material fact the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *See Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1080–81 (3d Cir. 1996); *Kowalski v. L & F Products,* 82 F.3d 1283, 1288 (3d Cir.1996); *Meyer v. Riegel Products Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. 2505; *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 329–330 (3d Cir. 1995) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505) ("[T]he nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial.").

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jalil v. Avdel Corp.,* 873 F.2d 701, 706 (3d Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). However,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders other facts immaterial.

*Celotex,* 477 U.S. at 322–323, 106 S.Ct. 2548. In such situations, "the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* 477 U.S. at 325, 106 S.Ct. 2548; *Brewer,* 72 F.3d at 329–330 (citing *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548) ("When the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the non-moving party's evidence is insufficient to carry its burden of persuasion at trial.").

The non-moving party, here the plaintiff upon defendant's motion, "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue. Fed.R.Civ.P. 56(e). They must do more than rely only "upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985) (citation omitted); *see Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 324–25, 106 S.Ct. 2548. Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

■ The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. *Southeastern Transp. Auth. v. Pennsylvania Pub. Utility Comm'n,* 826 F.Supp. 1506, 1512 (E.D.Pa.1993), *aff'd,* 27 F.3d 558 (3d Cir. 1994). When ruling on cross-motions for summary judgment, the court must consider the motions independently, *Williams v. Philadelphia Hous. Auth.,* 834 F.Supp. 794, 797 (E.D.Pa.1993), *aff'd,* 27 F.3d 560 (3d Cir. 1994), and view the evidence on each motion in the light most favorable to the party opposing the motion, *see Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

### B. *Defendant's Motion*

Defendant moves for summary judgment on the ground that it is immune from suit for

its surrender of rental payments to the IRS pursuant to an IRS levy.[4] (Def. Mem. at 1.)

■ When a taxpayer is delinquent in paying taxes, the IRS may collect the tax by issuing a levy on the taxpayer's "property and rights to property." 26 U.S.C. § 6331(a) (West Supp.1998). The levy is merely a provisional remedy that "does not determine whether the Government's rights to the seized property are superior to those of other claimants." *United States v. National Bank of Commerce*, 472 U.S. 713, 721, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). The levy simply protects the Government against loss or diversion of the subject property while such claims are being resolved. *Id.*

A third party in possession of (or obligated with respect to) property or rights to property upon which a levy has been issued must surrender the property. 26 U.S.C. § 6332(a) (West Supp.1998); *Congress Talcott Corp. v. Gruber*, 993 F.2d 315, 318 (3d Cir.1993). A third party who does so has no liability to the delinquent taxpayer or any other person with respect to the surrendered property. 26 U.S.C. § 6332(e)[5]; *Congress Talcott Corp.*, 993 F.2d at 318. Immunity under § 6332(e) has been interpreted generously, *Farr v. United States*, 990 F.2d 451, 456 (9th Cir. 1993), and courts have held it applies whether or not the underlying levy is valid, *see Moore v. General Motors Pension Plans*, 91 F.3d 848, 851 (7th Cir.1996). Failure to surrender the property, however, will render the party personally liable to the Government for the value of the property as well as possible additional penalties. 26 U.S.C. § 6332(d); *Congress Talcott Corp.*, 993 F.2d at 318.

■ There are only two possible defenses for failure to comply with the levy: (1) the party is not "in possession of" nor "obligated with respect to" property or rights to property belonging to the taxpayer; or (2) the taxpayer's property is "subject to prior judicial attachment or execution." *National Bank*, 472 U.S. at 721–22, 105 S.Ct. 2919. "Under the second defense, even if others claim an interest in the property and the taxpayer's interest may be quantified as but a modicum, the property remains subject to attachment by the levy and must be surrendered until ultimate ownership can be resolved." *Gruber*, 993 F.2d at 319.

■ Defendant argues that it is immune from the present action under § 6332(e). Plaintiff responds that immunity does not apply to defendant in this case because the delinquent taxpayer, Bernard Weissman, had no "apparent interest" in the rent at the time the levy was issued. Plaintiff relies on the regulations issued pursuant to § 6332, which provide:

> Any person who surrenders to the Internal Revenue Service property or rights to property not properly subject to the levy in which the delinquent taxpayer has no apparent interest is not relieved of liability to a third party who has an interest in the property. However, if the delinquent taxpayer has an apparent interest in property or rights to property, a person who makes a good faith determination that such property or rights to property in his or her possession has been levied upon by the Internal Revenue Service and who surrenders the property to the United States in response to the levy is relieved of liability to a third party who has an interest in the property or rights to property, even if it is subsequently determined that the property was not properly subject to levy.

> **Effect of honoring levy.**—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)) shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

---

4. Plaintiff initially argued that the court should not consider defendant's motion on the ground that it was not ripe because defendant failed to make its self-executing disclosures pursuant to Fed.R.Civ.P. 26. (Pl. Reply Br. at 6–7.) It has since come to light, however, that Magistrate Judge Joel B. Rosen has ordered discovery stayed pending the resolution of the cross-motions for summary judgment. (*See* Rochford Cert., filed August 6, 1998, ¶ 5.) Moreover, the facts upon which the court bases its finding of immunity are undisputed.

5. 26 U.S.C. § 6332(e) provides:

26 C.F.R. § 301.6332–1(c)(2). Plaintiff argues that not only did Bernard Weissman not have an apparent interest in the rent at the time the levy was issued, but defendant did not make a good faith determination that the rent had been levied upon.

The court concludes that defendant is entitled to immunity from plaintiff's suit under § 6332(e). At the time the IRS issued the levy in September 1996, the information available to defendant compelled it to forward rent on the premises to the IRS. Defendant held a lease, which had never been reformed, naming Bernard Weissman as a lessor, and a 1976 deed by which Frelin Company had conveyed its interest in the premises to Mr. Weissman. (Burmeister Dec. ¶¶ 4, 5.) These documents establish at least the "apparent" or "modicum" of interest in the rent required by § 6332 and the implementing regulations. Plaintiff contends, however, that the correspondence between her attorney and defendant in July and October 1996 establishes otherwise.

The July letter from plaintiff's counsel to defendant merely indicated that the rent receivership had been terminated and that rent should be forwarded to the owner of the premises, Roberta Weissman. It made no reference to Bernard Weissman's interest, or lack thereof, in the premises. The October letter provided more information, asserting that plaintiff was then the "sole" owner of the premises and enclosing the deed from Zucker to plaintiff. Though the deed purported to transfer to plaintiff what was formerly Mr. Weissman's interest in the property, the deed by which Zucker allegedly obtained his interest in the premises was not included. Importantly, Bernard Weissman never communicated to defendant the need to forward rent to his wife in light of the change in ownership.

Under these confusing circumstances, defendant responded properly by forwarding rent to the IRS pursuant to the levy and seeking additional information regarding the chain of title from plaintiff. Nevertheless, plaintiff did not respond to defendant's November 1996 request until four months later in March 1997 when she simultaneously filed the present action and declared the lease terminated. During the interim, Mr. Weissman still retained an apparent interest in the premises or in the rental payments and defendant had no choice but to continue to forward rent payments to the IRS pursuant to the levy. Under federal law, § 6332(e) immunity must be generously conferred upon a party which complies with the IRS levy in the face of confusing information about the taxpayer's interest in the levied property. By enacting the strict requirements of § 6332(d) that a party receiving an IRS levy shall comply with it under threat of criminal and other financial penalty, Congress intended to confer broad immunity upon the compliant party who erroneously complies with the levy based upon a mistaken but good faith determination that the taxpayer had an apparent interest in the property under § 6332(e). As noted above, the reason for this statutory regime is rather simple: Congress did not wish to place the burden of making a correct determination of ownership or priority upon innocent third-parties such as the USPS. *See Farr v. United States,* 990 F.2d 451, 456 (9th Cir.1993) (noting that Congress enacted § 6332(e) to prevent third-parties served with a levy from "being forced to negotiate between the Scylla of IRS fury and the Charybdis of taxpayer vengeance every time a levy is made"); *Kane v. Capital Guardian Trust Co.,* 953 F.Supp. 1200, 1206–07 (D.Kan.1997) (same), *aff'd,* 145 F.3d 1218 (10th Cir.1998); *Allstate Financial Corp. v. United States,* 860 F.Supp. 653, 657 (D.Minn. 1994) (even where property is erroneously or mistakenly surrendered pursuant to IRS levy, § 6332(e) protects the surrendering party from any liability). Instead, the purpose of the levy is to safeguard the property until such claims can be resolved. *United States v. National Bank of Commerce,* 472 U.S. 713, 721, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). Defendant is therefore immune from this suit under § 6332(e), and plaintiff's Complaint must be dismissed.

Plaintiff argues that if defendant had doubts about the circumstances under which plaintiff became entitled to the rent, it should have performed a title search. (Pl. Opp'n Br. at 9.) But this cannot be defendant's responsibility. The levy itself only required that defendant make a "reasonable effort" and

that at a minimum it search its records using the taxpayer's name and address. (R. Weissman Aff., Ex. F.) As discussed above, defendant's records at the time the levy was issued, including the July and October correspondence from plaintiff's counsel, establish that Bernard Weissman had at least an "apparent" or "modicum" of interest in the rent,[6] and that the USPS made reasonable efforts to determine his interest.

There is an alternative basis upon which summary judgment must be granted in favor of defendant. Plaintiff seeks both termination of the lease and past-due rent. As to the latter claim, all past-due rent has now been paid to plaintiff, and defendant has agreed to make all future payments to her pursuant to the terms of the lease. Plaintiff's entitlement to rent is therefore no longer an issue in this case. As to termination of the lease, the court finds that this remedy is not available to plaintiff as a matter of law.

■ Federal law governs the rights of parties under a lease executed by the United States. *Girard Trust Co. v. United States,* 149 F.2d 872, 874 (3d Cir.1945); *J & R Realty Co. v. United States,* 418 F.Supp. 391, 392 (E.D.Pa.1976). Absent federal cases on point, the court may turn to general landlord tenant law for guidance. *Girard Trust,* 149 F.2d at 874.

■ Generally, in the absence of a provision of the lease providing otherwise, nonpayment of rent does not operate as a forfeiture. 28 A.L.R.2d 806 (1953); 31 A.L.R.2d 328 (1953); 2 Milton R. Friedman, *Friedman on Leases* § 16.2, at 1074 (4th ed.1997); *see Lennon v. United States Theatre Corp.,* 920 F.2d 996, 998 (D.C.Cir.1990); *Shim Assocs. v. Acme Markets, Inc.,* 1987 WL 12491, at *3 (D.N.J.1987); *Carteret Properties v. Variety Donuts, Inc.,* 49 N.J. 116, 127, 228 A.2d 674 (1967) (noting law's general abhorrence of forfeiture); *Vineland Shopping Center, Inc.*

*v. De Marco,* 35 N.J. 459, 469, 173 A.2d 270 (1961) (noting equitable doctrine relieving tenant from forfeiture for non-payment of monetary obligation); *Stanger v. Ridgeway,* 171 N.J.Super. 466, 474, 410 A.2d 59 (App. Div.1979) ("[t]he law has always disfavored forfeitures of the tenant's estate"). Even where the lease specifically provides for forfeiture upon nonpayment of rent, the remedy is not always available. "The settled principle of both law and equity that contractual provisions for forfeitures are looked upon with disfavor applies with full force to stipulations for forfeitures in leases, and such stipulations are ... strictly construed against the party seeking to invoke them." 31 A.L.R.2d 328 (1953). Courts therefore permit relief from forfeiture where the equities weigh in favor of the lessee and the lessor can be made whole by payment of the delinquent rent. *See Friedman* § 16.2, at 1074; 31 A.L.R.2d 327–28 (1953); Restatement (Second) of Property, Landlord & Tenant § 12.1(2)(b) (1977).

■ In this case, there is no provision in the lease that provides for forfeiture upon the tenant's nonpayment of rent. Furthermore, the equities clearly weigh in favor of the defendant and against forfeiture. This is not a case where the tenant is either unwilling or unable to pay rent. In fact, defendant never stopped paying rent; it simply paid it to the IRS rather than plaintiff subsequent to its receipt of the levy and then to the Clerk of the Court pursuant to court order.[7] Moreover, the circumstances under which defendant became obligated to plaintiff—the alleged transfer of Bernard Weissman's ownership interest to plaintiff—were at best confusing. As discussed above, Bernard Weissman never himself contacted defendant regarding the change in ownership, plaintiff never sought to amend the lease to remove Bernard Weissman's name as the lessor, and the information provided by

---

6. Plaintiff also argues that even if immunity applies to plaintiff's claim for past-due rent, it does not apply to plaintiff's claim for injunctive relief, that is, termination of the lease and possession of the premises. Plaintiff, however, provides no legal support for this argument, and such a limitation is not to be found in the language of § 6332(e).

7. To the extent plaintiff relies on defendant's payment of rent to the court in support of its forfeiture claim, this argument is unavailing. At no time did plaintiff seek to have the court order vacated, and any harm plaintiff has suffered as a result of the order has been remedied by the release of the funds to her, with interest.

plaintiff's counsel prior to filing suit and declaring the lease terminated did not fully explain the chain of title. Defendant acted in good faith in November 1996 when it requested additional information, yet plaintiff did not respond until some four months later and simultaneously filed suit. Under these circumstances, the equities weigh in favor of defendant, and plaintiff is not entitled to terminate the lease. As a matter of law, under these circumstances, ejectment is unavailable as a remedy, all rental payments having been made.

### III. *Conclusion*

For the foregoing reasons, the court concludes that defendant is entitled to immunity under 26 U.S.C. § 6332(e) and its motion for summary judgment is granted.[8] Alternatively, even if immunity were subject to a material factual dispute, there is no dispute that all rents are current and that, under these circumstances, ejectment is unavailable as a remedy to plaintiff as a matter of law.

The accompanying Order is entered.

### ORDER

This matter having come before the court upon plaintiff's and defendant's cross-motions for summary judgment pursuant to Fed. R.Civ.P. 56; and the court having considered the submissions of the parties; and for reasons stated in the Opinion of today's date;

IT IS this 26th day of August 1998 hereby

ORDERED that defendant's motion for summary judgment be, and hereby is, *GRANTED,* and Judgment is entered in favor of the defendant and against plaintiff; and it is

FURTHER ORDERED that plaintiff's motion for summary judgment be, and hereby is, *DENIED;* and it is

FURTHER ORDERED and DECREED that the lease be reformed to reflect plaintiff Roberta Weissman as lessor and that defen-

---

8. In light of the court's finding of immunity, plaintiff's cross-motion for summary judgment is denied. Because defendant has now admitted that plaintiff is owner of record of the premises (*see* Def. Answer ¶ 4), the court will, however,

dant make all future rent payments under the lease to plaintiff, Roberta Weissman.

order that the lease be reformed to reflect the lessor as Roberta Weissman and will further order that all future rent payments under the lease be made to her.